**CENTER FOR AUTO SAFETY, Plaintiff,**

v.

**NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION, Defendant.**

**Civ. A. No. 92–1151.**

United States District Court, District of Columbia.

Jan. 8, 1993.

Paul R.Q. Wolfson, Alan B. Morrison, Washington, DC, for plaintiff.

Elizabeth A. Pugh, Robert A. Van Kirk, Civil Div., Federal Programs Branch, U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM

GESELL, District Judge.

The National Highway Traffic Safety Administration ("NHTSA") has denied plaintiff's Freedom of Information Act ("FOIA") request for the names and addresses of individuals who have complained

to that agency about auto safety problems they have experienced. NHTSA asserts exemption 6 of FOIA, 5 U.S.C. § 552(b)(6), to protect complainants' privacy. Plaintiff, Center for Auto Safety ("CAS"), a consumer group, questions the strength of any privacy claim but primarily urges that any privacy concerns are outweighed when balanced against the public interest. This now familiar but unsatisfactory scenario, which causes a court to balance privacy interest against the public interest, comes before the Court on cross-motions for summary judgment, which present, without dispute, all material facts and relevant authorities.

■ The law in this Circuit and the recent change earlier this year in NHTSA's policy which previously supported disclosure of the complainants' names and addresses can be traced to *United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). *Reed v. NLRB*, 927 F.2d 1249, 1251–52 (D.C.Cir. 1991); *National Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875, 879 (D.C.Cir.1989). In balancing the privacy interest against the public interest in disclosure, this Circuit now gives a much greater emphasis to the indirect effects of releasing a list of names and addresses to accommodate a particular requestor's needs which results in placing the list available to all persons and entities other than the requestor. Indeed, it recently declared that the identity of the requestor and its purposes are not to be weighed in the balancing process. *Reed, supra* at 1252. This position reflects full recognition that material released under FOIA to one person "must be released to all." *Painting and Drywall Work Preservation Fund v. HUD*, 936 F.2d 1300, 1302 (D.C.Cir.1991).

CAS seeks the names and addresses as an aid in furthering its efforts, to encourage auto safety. NHTSA files complainants' names and addresses in a data bank to use in carrying out the agency's administrative responsibilities and reveals the substance of the complaints publicly without attribution to anyone on a quarterly basis.

CAS believes it can learn more than NHTSA releases in summary form by contacting complainants and notes particularly that its efforts will further the effectiveness of the recall system administered through NHTSA. CAS also suggests it has a significant oversight function and may seek funding from complainants to carry out that function. These circumstances, whatever their merit, have little relevance, given the recent decisions of this Circuit.

■ Since the consequences of a general mailing list of complainants concerned with auto safety are clearly and foreseeably intrusive, complainants will have forfeited a degree of privacy because they chose to alert the proper agency of government to circumstances suggesting tighter auto safety controls. Yet CAS has failed to meet its burden of establishing that the public interest outweighs the privacy interests of complainants to the extent the complainants must, as a price for their interest in sound government, be confronted with the barrage of junk mail, telephone calls, and commercial exploitation that the list will invoke if their names and addresses are placed in the public domain. There are common interests of every complainant in the kind of disclosure contemplated. Because of that fact, a specialized list, by its very nature, will be used by individuals and concerns that do not necessarily share the same concerns of those listed but see a commercial or private advantage in exploiting them. *See National Association of Retired Federal Employees v. Horner*, 879 F.2d 873, 877 (D.C.Cir.1989).

Furthermore, some of the complaints may refer to injuries of a personal and upsetting nature. It is possible that persons involved in such incidents would resent unsolicited intrusion into their experiences. Although there is no way to ascertain how many complainants raise this issue or how many of them would be offended by the distribution of their names, even the plaintiff's expert estimates that injuries may be involved in as many as ten percent of the complaints written (Second Declara-

**150**

tion of Clarence M. Ditlow at 7), raising significant privacy concerns.

The type of analysis required of the District Court in this area is somewhat unrealistic and calls for judgment trial judges are not particularly qualified to make. The list of names and addresses sought involves thousands of people. The privacy of each is affected in some degree. No one knows or can determine how preciously or indifferently, if at all, each complainant views his privacy, how each will be affected by any solicitation or annoyance which may follow, or, indeed, how many seriously value any right of privacy any more in this computerized, impersonal, technocratic era.

When courts talk about privacy they talk about what Justice Brandeis epitomized in *Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928), as the "right to be let alone." The Constitution sought to protect individuality as well as material things by a government that would not impose unnecessary obligations on citizens in ensuring, as much as possible, their freedom to live without bureaucratic or other interference. This concept has gradually eroded but surely in a statute like FOIA, which seeks to protect privacy, a court should hesitate to discourage a position that preserves some degree of independence. If the privacy right has been virtually eliminated by the gloss current jurisprudence has written on the First, Fourth, and Fifth Amendments, the decisions of reviewing courts should so frankly declare. Absent such situations, which hopefully will not arise, this Court concludes that privacy outweighs plaintiff's concept of the public interest.

CAS functions as a significant consumer rights advocate in the area of automobile safety. This role does not, however, imply that CAS deserves to take over the functions of NHTSA. NHTSA, with all of the responsibilities and burdens that government agencies like it encounter, may not operate perfectly, but it does, like CAS, serve the public interest. The Court does not accept plaintiff's self-centered view that the public interest requires disclosure to CAS of the list sought. The public inter-

est is broader than plaintiff's notion, and encompasses not only the uses of the list by both NHTSA and CAS, but also the interests of citizens generally to complain to their government in privacy.

CAS seeks to override the strictures of Exemption 6 by attempting to deprecate the privacy claim. There are literally thousands of complainants. CAS points out that none have claimed privacy rights and that many are so upset by their independent experiences that they have chosen to complain to various safety interests in addition to NHTSA. While this suggests a willingness of some complainants to be in touch with auto safety interests, it has no relationship to loss of privacy caused by general public listing. Moreover, the evidence of multiple complaints to different organizations shows that those complainants who wish to be part of a more active consumer coalition such as CAS seeks to build know how to join one. Not all who write to NHTSA are necessarily so inclined.

The privacy of the complainants will be recognized and protected because there is no ascertainable public interest of sufficient significance or certainty to outweigh that right. The defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.