**William F. MANCHESTER, Plaintiff,**

v.

**DRUG ENFORCEMENT ADMIN., U.S. DEP'T OF JUSTICE, Defendant.**

**Civ. A. No. 91–2498.**

United States District Court, E.D. Pennsylvania.

June 11, 1993.

---

Edward Harvey Rubenstone, Groen, Laveson, Goldberg & Rubenstone, Bensalem, PA, for plaintiff.

William F. Manchester, pro se.

Virginia Gibson–Mason, Catherine Votaw, Asst. U.S. Atty., Philadelphia, PA, for defendant.

## MEMORANDUM ORDER

ROBRENO, District Judge.

AND NOW, to wit, this 11th day of June, 1993, upon consideration of defendant Drug Enforcement Agency's ("DEA" 's) motion for summary judgment (Document No. 34) and plaintiff William F. Manchester's responses thereto, it is hereby **ORDERED** that defendant's motion for summary judgment is **GRANTED** for all information claimed exempt under 5 U.S.C. §§ 552(b)(2), (b)(3), (b)(5), (b)(7)(C), and (b)(7)(F). DEA's motion for summary judgment with respect to information claimed exempt under 5 U.S.C. §§ 552(b)(7)(A), (b)(7)(D), and (b)(7)(E) is **DENIED** without prejudice and leave is granted to DEA to file a supplemental motion for summary judgment with supporting affidavits and a memorandum within 30 days from the date of this Order. The plaintiff shall have 30 days within which to respond to

any motion for summary judgment filed by the defendant.

Further, upon consideration of plaintiff's motion for a continuance to conduct limited discovery to oppose defendant's motion for summary judgment (Document No. 36), plaintiff's cross-motion for partial summary judgment (Document No. 46), and defendant's responses thereto, it is hereby **ORDERED** that plaintiff's motions are **DENIED**. These rulings are based upon the following reasoning:

## I. BACKGROUND

1. This case stems from Manchester's request for the production by the DEA and various other law enforcement agencies of voluminous documents pursuant to the Freedom of Information Act ("FOIA").[1] Manchester is currently serving a life sentence in the Delaware Correctional Center for his conviction in Delaware state court of attempted first degree murder, possession of a deadly weapon during the commission of a felony, and first degree conspiracy.[2] His FOIA requests seek all documents relating to the federal and state criminal investigations which culminated in his state conviction. Manchester claims that his conviction was based upon the fabricated testimony of his codefendant, the victim, and possibly other state witnesses. *See Manchester v. F.B.I.*, No. 87–1264, slip op. at 3 (D.D.C. Oct. 19, 1987). Plaintiff's FOIA requests are, therefore, aimed at obtaining records which will support his claim of innocence. *See* Plaintiff's Memorandum in Support of [First] Cross Motion for Partial Summary Judgment at 11; Plaintiff's Motion for Re-Activation of Civil Action at 15–17, 19, 25; Plaintiff's Answering Brief to Defendant's [Renewed] Motion for Summary Judgment at 7–8;

2. On November 24, 1987, Manchester filed the first of two FOIA requests with the Director's Office of the General Services Administration ("GSA") in Washington, D.C.

GSA forwarded the request to DEA's Washington, D.C., central office, which assigned the request number 87–1928–F. *Affidavit of William E. Bordley* ¶ 3, Ex. "1" (Document No. 34) (*"Bordley I"*). This request sought certain information pertaining to President Reagan's Organized Crime Drug Enforcement Task Force of the Mid–Atlantic Region ("OCDETF"), including but not limited to the criminal probe code-named "Arclight/Pariah." *Id.* ¶¶ 3–4; Plaintiff's Answering Brief to Defendant's Motion for Summary Judgment at 10;

3. On November 30, 1987, Manchester filed a second FOIA request with DEA's Philadelphia, Pennsylvania, field office, which assigned the request number 87–1951–F. *Bordley I* ¶ 4. The second request sought numerous additional documents relating to the OCDETF, including records of code-names of each OCDETF investigation of the Pagans Motorcycle Club ("PMC"), identification of all participants in each investigation, all documentation prepared in anticipation and as a result of each investigation, all regulations providing for the investigations, all court materials generated as a result of the investigations, and all press releases. Plaintiff's Answering Brief to Defendant's Motion for Summary Judgment at 10–13;

4. After acknowledging receipt of plaintiff's two FOIA requests and conducting the relevant searches, DEA informed plaintiff that, as to the first request, it had found no documents, *Bordley I* ¶ 5, and, as to the second request, all documents retrieved were exempt from disclosure. *Id.* ¶ 6. This response was subsequently amended to reflect that DEA had found no documents in response to the second request either. *Id.* ¶ 11;

5. Manchester appealed these rulings administratively to the Justice Department's Office of Legal Policy, Office of Information

---

1. FOIA requires federal agencies to make requested agency records available if the request "reasonably describes such records and ... is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed," unless the records fall within the statute's list of exemptions. 5 U.S.C. § 552(a)(3).

2. Superior Court of the State of Delaware, in and for New Castle County, Cr.A.Nos. IN84–12–1745 thru 1747, *aff'd, Manchester v. State*, 532 A.2d 1000 (Del.1987).

and Privacy ("OIP").[3] The appeals were denied. *Id.* ¶ 14;

6. On April 17, 1991, Manchester commenced an action in this Court pursuant to 5 U.S.C. § 552(a)(4)(B), seeking judicial review of these administrative decisions. On September 25, 1991, and October 10, 1991, respectively, DEA and Manchester filed cross-motions for summary judgment. The Honorable Jan E. DuBois denied without prejudice both motions for summary judgment and placed the case in the civil suspense file to permit DEA to search adequately for, and respond to, Manchester's FOIA requests in light of the information Manchester provided DEA through his submissions in opposition to DEA's motion for summary judgment and in support of his cross-motion.[4] Order of Nov. 22, 1991;

7. On February 24, 1992, May 28, 1992, and August 12, 1992, DEA supplemented its responses to Manchester's FOIA requests, releasing at least 114 pages of documents.[5] On August 20, 1992, the case was transferred to my docket. Thereafter, I returned the case to the active list to allow for consideration of DEA's renewed motion for summary judgment and of Manchester's motions for partial summary judgment and for a continuance to allow limited discovery to oppose defendant's motion for summary judgment, and to compel answers to interrogatories. Order of Sept. 21, 1992;

## II. STANDARD OF REVIEW

8. This Court has jurisdiction to hear this matter under 5 U.S.C. § 552(a)(4)(B), which provides for review by the district court of an administrative decision denying requests for production of information under the Freedom of Information Act;

9. Venue is proper in this district in that the records Manchester seeks are situated in the Eastern District of Pennsylvania.[6] *Bordley I* ¶ 14, Ex. "L" ("the Eastern District of Pennsylvania, which is where the search was conducted");

■ 10. FOIA was enacted to ensure public access to government information. The purpose of the statute is to permit the public to scrutinize the government's performance of its duties and promote governmental honesty. *EPA v. Mink,* 410 U.S. 73, 79–80, 93 S.Ct. 827, 832–33, 35 L.Ed.2d 119 (1973). Doubts as to the propriety of disclosure are to be resolved in favor of openness. *Providence Journal Co. v. United States Dept. of Army,* 981 F.2d 552, 557 (1st Cir. 1992);

11. Judicial review of an agency's denial of a FOIA request is *de novo.* 5 U.S.C. § 552(a)(4)(B); *Lame v. United States Dept. of Justice,* 654 F.2d 917, 921 (3d Cir.1981). Any reasonably segregable and non-exempt portion of a record must be disclosed. 5 U.S.C. § 552(b). The nine statutory disclosure[7] exemptions are to be narrowly con-

---

3. The Office of Information and Privacy handles the administrative appeals from the decisions of DEA's FOIA division. *See Bordley I* ¶ 7.

4. Manchester initially petitioned GSA and DEA for documents. Once the case was placed on civil suspense, DEA retrieved numerous materials as a result of its second processing of Manchester's FOIA requests. Pursuant to FOIA, DEA referred some of the requests to the Federal Bureau of Investigations ("FBI"), Bureau of Alcohol, Tobacco and Firearms ("ATF"), and the Executive Office of the United States Attorney's Office ("EOUSA"), as those agencies generated the respective documents. Each agency's response to Manchester's FOIA requests is discussed individually where applicable. The FBI's, ATF's, and EOUSA's responses supplement DEA's Motion for Summary Judgment and are not motions in and of themselves.

5. Among the voluminous documents released were OCDETF monthly reports for February

1983 and for August 1983 through December 1984, OCDETF quarterly reports for April 1985 through January 1987, and annual reports for 1988–90. Also included were supplemental OIP monthly and quarterly reports, DEA press releases, and a 15 page description of the PMC.

6. FOIA provides that "the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

7. The § 552 exemptions relevant to this case are found in the following subsections:
  (b)(2) (internal personnel rules and practices);
  (b)(3) (specific statutory exemptions, such as wiretap materials);

strued and the burden is on the agency to sustain its action. 5 U.S.C. § 552(a)(4)(B); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989); *Lame*, 654 F.2d at 921;

12. To prevail on summary judgment, the movant has the initial responsibility of pointing out the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party does so, the nonmovant must go beyond the pleadings and show that there is a genuine issue for trial—if necessary by filing affidavits. *Id.* at 323–24, 106 S.Ct. at 2552–53. Summary judgment requires the court to view all issues of material fact in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir.1988);

13. In a FOIA action, summary judgment is proper when the government's affidavits " 'describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.' " *American Friends Serv. Comm. v. Department of Defense*, 831 F.2d 441, 444 (3d Cir.1987) (quoting and adopting standard from *Abbotts v. Nuclear Regulatory Comm'n*, 766 F.2d 604, 606 (D.C.Cir.1985) (citation omitted));

■ 14. FOIA permits, but does not require, an *in camera* inspection of the documents the government agency claims exempt. 5 U.S.C. § 552(a)(4)(B). The decision to conduct an *in camera* review of the documents the government claims are exempt is within the broad discretion of the trial judge. *Lam Lek Chong v. United States DEA*, 929 F.2d 729, 735 (D.C.Cir.1991). *In camera* inspection may be appropriate if agency affidavits insufficiently detail the justification for nondisclosure, thereby preventing a meaningful

review of the cited exemptions, or if evidence of agency bad faith is before the court. *Id.;*

■ 15. In the instant case, an *in camera* inspection of the documents DEA withheld or redacted is not warranted because Manchester has not provided this court with any evidence of agency bad faith, and the government's affidavits, discussed *infra*, permitted me to conduct a meaningful review of all the claimed exemptions but two. *Id.;*

## III. THE GOVERNMENT AGENCIES' AFFIDAVITS

■ 16. Affidavits are the means through which a governmental agency details the search it conducted for the documents requested and justifies nondisclosure of the requested documents under each exemption upon which it relied upon. *Lame*, 654 F.2d at 921. The affidavits must be detailed, nonconclusory, and submitted in good faith. *Weisberg v. United States Dept. of Justice*, 705 F.2d 1344, 1351 (D.C.Cir.1983). A *Vaughn* index, a supplement which supplies an index of the withheld documents and details the agency's justifications for claiming exemption, may accompany the agency's affidavits. *Patterson v. F.B.I.*, 893 F.2d 595, 599 & n. 7 (3d Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990); *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned. *Manna v. United States Dept. of Justice*, 815 F.Supp. 798, 817 (D.N.J.1993) (quoting *Matter of Wade*, 969 F.2d 241, 246 (7th Cir.1992));

■ 17. DEA, ATF, and FBI submitted the affidavits of William E. Bordley (DEA), Renee A. Marshall (DEA), Robert L. Pritchett (ATF), Karlton D. Bolthouse (FBI), and Virginia Wright (EOUSA), and an accompanying 995–page *Vaughn* index to support DEA's motion for summary judgment. I find that the affidavits are detailed and non-

(b)(5) (privileged information);
(b)(7)(A) (interference with law enforcement proceedings);
(b)(7)(C) (personal privacy);

(b)(7)(D) (confidential sources and information);
(b)(7)(E) (law enforcement methods);
(b)(7)(F) (life or safety of persons).

conclusory. The affidavits explicitly recite the administrative procedures DEA applied to Manchester's FOIA requests, the dates and number of pages within the files searched, why and how the files were generated, and the applicability of the cited exemptions to the respective pages withheld.[8] I shall discuss the contents of the affidavits in context with the relevant exemptions;

18. Manchester repeatedly attacks each affidavit as not satisfying the individual burdens of proof required by the exemptions. Manchester generally contests each affiant's explanation and his or her good faith;

19. I find the agencies' searches were conducted in good faith and were reasonably calculated to uncover all relevant documents Manchester requested. *See Weisberg*, 705 F.2d at 1351; *cf. Ground Saucer Watch, Inc. v. C.I.A.*, 692 F.2d 770, 771–72 (D.C.Cir.1981). As discussed below, the affidavits adequately explain each agency's search procedures, the searches conducted, the files and total number of documents withheld, and the applicability of the agencies' asserted exemptions to their FOIA responsibilities for all but three of the exemptions invoked (exemptions (b)(7)(A), (b)(7)(D), and (b)(7)(E));[9]

## IV. THE EXEMPTIONS

20. In its motion for summary judgment, DEA invokes FOIA exemptions 5 U.S.C. §§ 552(b)(2), (b)(3), (b)(5), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F), contending that all information redacted from released documents or withheld completely is exempt from disclosure. The Court will address the exemptions claimed by DEA *seriatim;*

A. *Internal Personnel Rules and Practices, 5 U.S.C. § 552(b)(2).*

21. This exemption precludes disclosure of internal personnel rules and practices of an agency and applies to "routine matters" of "merely internal significance." 5 U.S.C. § 552(b)(2); *Lieverman v. United States Dept. of Justice*, 597 F.Supp. 84, 86 (E.D.Pa. 1984). DEA raises this exception to bar disclosure of all internal DEA codes and file markings.[10] Manchester concedes this information is exempt from disclosure. Plaintiff's Answering Brief to Defendant's Motion for Summary Judgment at 22 n. 7;

B. *Withholding Statutes, 5 U.S.C. § 552(b)(3).*

■■■ 22. Exemption (b)(3) precludes disclosure of all materials exempted from disclosure by some other statute (a "withholding statute") if that statute requires the materials to be withheld by law in such a manner as to leave no discretion on the issue, or if the statute establishes criteria for withholding the materials. 5 U.S.C. § 552(b)(3). If the court determines that a relevant withholding statute exists and that any of the withheld information is within the statute's coverage, the material must be withheld no matter how unwise the statute may seem. *Goland v. C.I.A.*, 607 F.2d 339, 350 n. 65 (D.C.Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). If, however, materials that are sought previously became part of the public domain, exemption is inapplicable, but before disclosure is warranted, the initial burden of production is on the person seeking disclosure to identify the specific material which became public. *Davis v. United States Dept. of Justice*, 968 F.2d 1276, 1279 (D.C.Cir.1992);

■■ 23. DEA argues all applications for, and information obtained from, wiretaps during the criminal investigation of the PMC, authorized by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510, *et seq.*, are barred from dis-

---

**8.** *See Affidavits of William E. Bordley*, Ex. "1," Document No. 34 (*"Bordley I "*), Ex. "2," Document No. 45 (*"Bordley II "*), and Ex. "A," Document No. 50 (*"Bordley III "*); *Declaration of Robert L. Pritchett*, Ex. "A," Document No. 35; *Declaration of Karlton D. Bolthouse*, Ex. "1," Document No. 45; *Declaration of Renee A. Marshall*, Ex. "2," Attach. "A," Document No. 45.

**9.** *See infra* ¶ 43.

**10.** DEA internal marking and identifier codes subject to (b)(2)'s protections are found on the following pages of the *Vaughn* index: 1–64, 66, 68, 70, 72, 74, 76, 78, 80–82, 84, 89, 94–107, 109–37, 140–62, 164–98, 200–49, 251–440, 442, 444–45, 447, 449–99, 501–03, 505–19, 521–48, 551, 556–59, 563–67, 573–74, 577–602, 604, 606–50, 706–07, and 709–75, 801–48, 941–95.

closure because Title III is a withholding statute (as defined by § 552(b)(3)). *Bordley I* ¶ 23;[11]

24. Manchester contends that documents concerning DEA's wiretaps have become part of public judicial records pursuant to Federal Rule of Criminal Procedure 41(g), and thus disclosure under FOIA is warranted. *See* Plaintiff's Answering Brief to Defendant's Motion for Summary Judgment and Opening Brief in Support of Plaintiff's Cross–Motion for Summary Judgment at 59–60 (citing *Certain Interested Individuals v. Pulitzer Publishing Co.*, 895 F.2d 460 (8th Cir.), *cert. denied*, 498 U.S. 880, 111 S.Ct. 214, 112 L.Ed.2d 173 (1990); *In re Application of Newsday, Inc.*, 895 F.2d 74 (2d Cir.), *cert. denied*, 496 U.S. 931, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990)). Manchester's reliance upon Rule 41(g) is misplaced, however, because the cases he cited concern information obtained through wiretapping and then later submitted in support of search warrant applications, which information would become public judicial records under Rule 41(g). *See, e.g., Application of Newsday*, 895 F.2d at 75–77. In contrast, the documents DEA claims exempt under (b)(3) in the present case concern Title III wiretap applications themselves, with no relation to any subsequent search warrant applications;

25. Manchester recognizes he is required to identify which information has become public. He claims, however, that DEA's refusal to release *any* information used in other PMC judicial proceedings and investigations precludes him from identifying which information has become public. As a result, Manchester requests additional discovery so that he may determine which, if any, information is public, permitting him to satisfy his FOIA burden.[12] Manchester, though, has not satisfied his initial burden of pointing to

the "specific information" sought which has become public. *Davis*, 968 F.2d at 1279. Contrary to Manchester's suggestion, DEA is not required to *prove* that the information Manchester seeks has not become public. *Id.* Because Manchester has not satisfied his initial burden of showing that the information he seeks has become public, his circular argument for more discovery is without merit;

26. DEA is not required to produce any wiretap applications nor information accumulated from the wiretaps obtained pursuant to 18 U.S.C. § 2518. Title III is a withholding statute (as defined by § 552(b)(3)), because Title III explicitly limits disclosure of information obtained pursuant to its statutory guidelines. *Davis*, 968 F.2d at 1280; *Docal v. Bennsinger*, 543 F.Supp. 38, 43 (M.D.Pa. 1981).[13] Because Title III is a withholding statute and the wiretap applications and derivative information DEA withheld under this exemption fall within the purview of the statute, disclosure is barred in this FOIA proceeding. *Davis*, 968 F.2d at 1280; *Lam Lek Chong*, 929 F.2d at 733;

■ 27. DEA additionally claims that certain materials are exempt because they were generated in grand jury proceedings.[14] Such information, DEA claims, is exempt under (b)(3) because grand jury records are subject to a withholding statute;

28. Federal Rule of Criminal Procedure 6(e) directs that persons involved in a grand jury proceeding, or government personnel to whom disclosure is authorized, "shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules." Fed.R.Crim.P. 6(e)(2). Courts visiting this issue have determined that Federal Rule of Criminal Procedure 6(e) is a withholding statute as defined by FOIA, and,

---

**11.** Information withheld under this exemption, because it is subject to 18 U.S.C. § 2518, is found on the following pages of the *Vaughn* index: 500, 504, 520, 544, 585, 593, 638–709, 711–13, 715–16, 719–940, and 942–95.

**12.** Currently pending is Plaintiff's Motion for a Continuance to Conduct Limited Discovery to Oppose Defendant's Motion for Summary Judgment (Document No. 36), which shall be denied for the reasons stated herein.

**13.** Moreover, Title III's provisions for disclosure by law enforcement officials or by witnesses at trial are not applicable to Manchester. *See* 18 U.S.C. § 2517.

**14.** Information from the grand jury proceedings is found on pages 11, 13, 16, 24, 28, 32, 36, 608, and 613 of the *Vaughn* index.

therefore, grand jury documents are not subject to release under FOIA, *see Harvey v. United States Dept. of Justice*, 747 F.Supp. 29, 38–39 (D.D.C.1990), provided they were not "created for purposes independent and unrelated to the grand jury investigation." *Manna*, 815 F.Supp. at 813. Rather, the proper method for seeking disclosure of grand jury material is to file a motion "in the district where the grand jury convened." Fed.R.Crim.P. 6(e)(3)(D); *see Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 225–26, 99 S.Ct. 1667, 1676–77, 60 L.Ed.2d 156 (1979). Therefore, any requests for disclosure of grand jury materials must be made pursuant to Rule 6(e), and I hold these materials exempt from FOIA disclosure under (b)(3);

C. *Privileged Information, 5 U.S.C. § 552(b)(5).*

■ 29. Under this exemption, Congress has barred the release of inter-agency or intra-agency documents not "available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Information claimed to be exempt under this section falls into two categories: attorney work product privilege and deliberative process privilege.[15] Attorney work product privilege exempts from disclosure documents compiled in preparation for, or in contemplation of, litigation, *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 864–65 (D.C.Cir.1980), without regard to the status of the litigation for which it was prepared. *F.T.C. v. Grolier, Inc.*, 462 U.S. 19, 28, 103 S.Ct. 2209, 2214, 76 L.Ed.2d 387 (1983);

■ 30. The deliberative process privilege exempts from disclosure any information revealing the deliberative process which precedes most decisions of governmental agencies. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153, 95 S.Ct. 1504, 1517, 44 L.Ed.2d 29 (1975). A deliberative process document is predecisional and deliberative, and it "explains, directly or by reference, the

reason for the agency's decision." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1204 (D.C.Cir.1991). The government, through its affidavits, is required to pinpoint an agency decision or policy which the documents preceded and to which they contributed, and the "'role played by the documents in issue in the course of that process.'" *Senate of Puerto Rico v. United States Dept. of Justice*, 823 F.2d 574, 585–86 (D.C.Cir.1987) (quoting *Coastal States Gas Corp.*, 617 F.2d at 868). Documents qualify as deliberative if they actually relate to the process of formulating policy, and such documents would include those that reflect personal opinions rather than that of the agency, as well as those that would, if released, "'inaccurately or prematurely disclose the views of the agency.'" *National Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1114, 1118–19 (9th Cir.1988) (quoting *Coastal States Gas Corp.*, 617 F.2d at 866);

■ 31. In this case, the DEA has specifically identified the withheld materials as "opinions, recommendations or strategy statements" that represent case agents' proposed courses of action, recommended techniques, and cost estimates for "criminal investigations into the activities of the Pagans Motorcycle Club and other suspected organized crime." *Bordley I* ¶¶ 24–25;[16]

■ 32. The Court concludes that the information requested by Manchester (*see supra* note 16) is "deliberative process" information and, therefore, exempt from disclosure because the DEA's affidavits pinpoint the "'role played by the documents in issue in the course of [the agency's process of formulating particular decisions and policy].'" *Senate of Puerto Rico*, 823 F.2d at 585–86 (quoting *Coastal States Gas Corp.*, 617 F.2d at 868);

33. The Court further finds that "[s]ome of the documents were prepared by or with the assistance of attorneys ..." [including, in particular, those] "documents relating to wire

---

15. Under certain circumstances, the attorney-client privilege also may provide a basis for exempting a document from disclosure under (b)(5). *See Manna*, 815 F.Supp. at 814.

16. Deliberative process information is found on the following pages of the *Vaughn* index: 20, 24, 28, 36, 40, 44, 48, 56, 60, 64, 66, 68, 205–06, 500, 504, 520, 566, 589, 593, 604–06, 619, 622, 627–28, 649–700, 776–800, and 857–940.

intercepts," and the material also "represents DEA investigative reports or documents prepared for the purpose of pursuing prosecution of individual cases pursuant to Titles 18 and 21 of the United States Code." *Bordley I* ¶¶ 24–25;

■■■■ 34. The Court concludes that the work product information [17] is exempt from disclosure because the materials were gathered or prepared in contemplation of litigation. *Coastal States Gas Corp.*, 617 F.2d at 864. As noted above, Manchester has not identified which information has become public in order to render FOIA exemptions inapplicable. *Davis*, 968 F.2d at 1280. Further, the Court is not required to conduct an *in camera* review in order to determine that factual information is not reasonably segregable from privileged work product information, when, as here, the affidavits and index satisfy the court that any factual information is incidental to, and bound with, privileged work product. *See Mervin v. FTC*, 591 F.2d 821, 825–26 (D.C.Cir.1978). Finally, the protection of the work product doctrine does not evaporate with time. *FTC v. Grolier, Inc.*, 462 U.S. at 26–27, 103 S.Ct. at 2213–14;

D. *Law Enforcement Proceedings, 5 U.S.C. § 552(b)(7)(A).*

■■ 35. FOIA's subsection (b)(7)(A) bars release of documents compiled for law enforcement purposes, the disclosure of which could reasonably be expected to interfere with enforcement proceedings. 5 U.S.C. § 552(b)(7)(A); *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 216, 98 S.Ct. 2311, 2314, 57 L.Ed.2d 159 (1978). "Foremost among the purposes of this Exemption [ (b)(7) ] was to prevent 'harm [to] the Government's case in court,' by not allowing litigants 'earlier or greater access' to agency investigatory files than they would otherwise have." *Robbins Tire & Rubber Co.* 437 U.S. at 224, 98 S.Ct. at 2318 (quoting legislative history) (citations omitted);

36. DEA claims this exemption permits it to withhold information on pages 102–37 of the *Vaughn* index. However, DEA has nei-

ther addressed this exemption in any of its affidavits nor briefed it in its memoranda. The only evidence DEA provides to support its contention that the PMC is currently under investigation is a letter dated December 11, 1992, from Peter F. Gruden, a DEA special agent of the Washington Field Division, to Christopher Bradley, chief of DEA's FOIA section. *See Bordley II*, Att. C–3. Because this document was not sworn to under oath, I accord it little weight in my determination of the issues currently before me;

37. "Where exemption 7(A) is concerned, as a practical matter, it is often feasible for the courts to make 'generic determinations' about interference with enforcement proceedings. In many 7(A) cases, at least, affidavits of [officials involved with the investigation] ... would seem to provide an adequate basis for making such determinations." *Dickerson v. Department of Justice*, 992 F.2d 1426, 1431 (6th Cir.1993) (citation omitted);

38. However, in the present case, the absence of briefs and affidavits discussing exemption 7(A) precludes me from conducting a meaningful review of DEA's reasons for invoking this exemption. Therefore, DEA's motion for summary judgment with respect to this information is denied without prejudice. DEA is granted leave to file a supplemental motion for summary judgment supported by appropriate affidavits and a memorandum addressing information withheld under exemption 5 U.S.C. § 552(b)(7)(A) within thirty days from the date of this Order;

E. *Personal Privacy, 5 U.S.C. § 552(b)(7)(C).*

■■■ 39. This exemption precludes disclosure of all "records or information compiled for law enforcement purposes," the dissemination of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); *United States Dept. of Justice v. Reporters Comm.*, 489 U.S. 749, 751, 109 S.Ct. 1468, 1470, 103 L.Ed.2d 774 (1989).

**17.** Work product information has been identified on the following pages of the *Vaughn* index: 86, 541, 543–44, and 849–56.

Once the court identifies the privacy interests affected by disclosure, it must evaluate the public interests served by release, and then balance the two sets of interests. *Landano v. United States Dept. of Justice,* 956 F.2d 422, 426–31 (3d Cir.1992), *vacated on other grounds,* —— U.S. ——, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). This exemption does not prohibit all disclosures that invade personal privacy, but only disclosures entailing an unwarranted invasion of personal privacy. *Lame,* 654 F.2d at 922;

■ 40. Privacy interests recognized under (b)(7)(C) have been extended to "individuals involved in a criminal investigation—including suspects, witnesses, interviewees, and investigators." *Landano,* 956 F.2d at 426. Reasons for nondisclosure include the potential embarrassment and harassment to which suspects, witnesses, and federal enforcement personnel may become subjected if their identities are released. *See, e.g., Halloran v. Veterans Admin.,* 874 F.2d 315, 321 (5th Cir.1989); *Cleary v. F.B.I.,* 811 F.2d 421, 424 (8th Cir.1987); *Baez v. United States Dept. of Justice,* 647 F.2d 1328, 1338 (D.C.Cir.1980). The passage of time does not necessarily dilute the privacy concerns of all individuals involved in criminal investigations. *Landano,* 956 F.2d at 427; *Manna,* 815 F.Supp. at 809. Because material released to one person must be released to all, the indirect effects of releasing names and addresses through FOIA weigh in favor of privacy. *Center for Auto Safety v. National Highway Traffic Safety Admin.,* 809 F.Supp. 148, 149 (D.D.C.1993);

41. The citizens' right to be informed about "'what their government is up to'" is the public interest that exemption (b)(7)(C) recognizes. *Landano,* 956 F.2d at 428 (quoting *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. at 1481). Requests cloaked in the public interest which actually seek personal information accumulated from government investigations pose the danger of resulting in an unwarranted invasion of privacy. *Id.* at 428–31. The requester's identity and rea-

sons for the FOIA petition are not to be weighed in the balance. *Center for Auto Safety,* 809 F.Supp. at 149. *But see Manna,* 815 F.Supp. at 809–10 (determining that the facts of the case necessitated departure from general rule, in that release of identities would make law enforcement "assistors unnecessarily vulnerable to possible harassment and retaliation");

■ 42. DEA states that all information withheld pursuant to (b)(7)(C) is exempt from disclosure because it was provided by targets of DEA investigations, confidential sources, or DEA agents solely for law enforcement purposes. *Bordley I* ¶ 26.[18] DEA claims the disclosure of these persons' identities or the information they provided would pose "an unwarranted invasion of their privacy" and subject them to potential harassment and danger. *Id.* Each agency has denied Manchester's accusations of governmental bad faith and misconduct. *See* Defendant's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment at 2 n. 2;

43. ATF & FBI contend that all information claimed exempt hereunder would identify confidential sources, DEA or ATF agents, and relatives of the sources and agents; would subject them to harassment and retaliation; and would constitute an invasion of their privacy. *See* Defendant's Supplemental Memorandum in Support of its Motion for Summary Judgment Regarding Records of the Bureau of Alcohol, Tobacco and Firearms at 3–6; *Declaration of Robert L. Pritchett* ¶¶ 15–17 (attached to Document No. 35); *see also* Defendant's Reply in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Motions at 5; *Declaration of Karlton D. Bolthouse* ¶¶ 8–23;

44. Manchester contends that allegations of misconduct, previously levied against numerous federal agents and agencies involved in his prior criminal proceedings and in the current FOIA action, should be deemed to be true because the government has not contested them. Included among the alleged misconduct are *Brady* and *Jencks* violations,

---

18. Information which identifies individuals involved with the PMC investigation, and which is protected by § 552(b)(7)(C) for privacy reasons, is found on the following pages of the *Vaughn*

index: 19, 66, 68, 70, 72, 74, 76, 78, 80–82, 84, 87–108, 110–548, 550–58, 560, 562–73, 576–700, and 706–995.

perjury, and governmental cover-up of these violations. Plaintiff's Answering Brief to Defendant's Motion for Summary Judgment at 82–87;[19]

45. While Manchester sweepingly alleges governmental misconduct, he fails to point to evidence in support of this accusation. Merely speculative claims will not overcome the presumption of good faith to which the government's affidavits are entitled. *Albuquerque Publishing Co. v. United States Dept. of Justice,* 726 F.Supp. 851, 860 (D.D.C.1989);

46. "[W]hen [as here] governmental misconduct is alleged as the justification for disclosure, the public interest is 'insubstantial' unless the requester puts forward 'compelling evidence that the agency denying the FOIA request is engaged in illegal activity' and shows that the information sought 'is necessary in order to confirm or refute that evidence.'" *Davis,* 968 F.2d at 1282 (quoting *Safecard Servs.,* 926 F.2d at 1205–06). Manchester has neither provided "compelling evidence" to warrant disclosure, nor addressed the issue of unwarranted invasion of privacy as it pertains to the exemption;

47. Several circuits have held that the public interest in the fairness of a particular trial is not the kind of public interest that compels disclosure under (b)(7)(C). *E.g., Hale v. United States Dept. of Justice,* 973 F.2d 894, 901 (10th Cir.1992), *cert. granted and judgment vacated,* —— U.S. ——, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993); *Antonelli v. F.B.I.,* 721 F.2d 615, 619 (7th Cir.1983) ("The contention that 'the public shares [the requester's] interest in ensuring that his convictions were not obtained as a result of a violation of the Constitution' is [an] insuffi-

cient [public interest]."), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984). Weighing the privacy and public interests in the present case, nondisclosure of the information to Manchester under this exemption is warranted;

48. The case of *Burge v. Eastburn,* 934 F.2d 577 (5th Cir.1991), provides additional insight into the futility of Manchester's attempt to obtain (b)(7)(C) materials. In *Burge,* a state inmate sought FBI records containing pre-trial statements given to FBI agents in a concurrent civil rights investigation. *Id.* at 578. Burge argued, as Manchester does, that there is a public interest in determining whether he received a fair trial in state court. *Id.* at 580. The Fifth Circuit, while acknowledging there was a public interest in securing a fair state trial, recognized no such public interest under FOIA: "As in *Reporters Committee,* the requester in this case 'does not intend to discover anything about the conduct of the agency that has possession of the requested records.'" *Id.* (quoting *Reporters Comm.,* 489 U.S. at 773, 109 S.Ct. at 1481). "Only when the information requested reflects directly upon the way that the agency conducts business has the requester placed something on the public interest side of the balancing equation." *Landano,* 956 F.2d at 430;[20]

### F. Confidential Sources and Information, 5 U.S.C. § 552(b)(7)(D).

49. Section (b)(7)(D) exempts from disclosure law enforcement records that "could reasonably be expected to disclose the identity of a confidential source ... [and] information furnished by a confidential

---

**19.** In other actions, plaintiff has levied numerous accusations of governmental misconduct against both federal and state actors, some of the accusations stemming from his arrest and conviction in the State of Delaware for attempted first degree murder, which is discussed in *Manchester v. State of Del.,* 532 A.2d 1000 (Del.1987). Manchester's previous actions based on the alleged misconduct have been found to be without merit. *See Manchester v. Rzewnicki,* 777 F.Supp. 319, 322–23 (D.Del.1991) (dismissing Manchester's civil conspiracy, RICO, and § 1983 claims, and discussing earlier actions), *aff'd,* 958 F.2d 364 (3d Cir.1992).

**20.** Further, the Third Circuit in *Landano,* confronted with facts similar to *Burge,* held that "there is no FOIA–recognized public interest in discovering wrongdoing by a *state* agency" from federal government files. *Landano,* 956 F.2d at 430 (emphasis in original). To the extent, therefore, that Manchester seeks documents from the federal agencies in order to find evidence of alleged wrongdoing in his state prosecution, nondisclosure of the requested information is warranted on this basis as well.

source." 5 U.S.C. § 552(b)(7)(D).[21] The DEA invokes exemptions (b)(7)(C) and (b)(7)(D) largely interchangeably, arguing that any information not protected by (b)(7)(D) is, nonetheless, exempt from release under (b)(7)(C). *See* Memorandum of Law in Support of Defendant's Renewed Motion for Summary Judgment at 16 & n. 2; *see generally Kiraly v. F.B.I.*, 728 F.2d 273, 278 (6th Cir.1984) (discussing the inter-connection of (b)(7)(C) & (b)(7)(D)). Whereas exemption (b)(7)(C) might, indeed, bar the disclosure of the identities of confidential sources, Manchester's requests for the information obtained from the confidential sources do not necessarily implicate concerns over invasion of privacy such that (b)(7)(C) would apply;

50. Moreover, I note that the Supreme Court has recently examined exemption (b)(7)(D), vacating the Third Circuit's decision in *Landano* on that basis. *See United States Dept. of Justice v. Landano*, — U.S. ——, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). The Supreme Court held that although not all sources that supply information to the FBI during a criminal investigation are presumed confidential within the meaning of this exemption, confidentiality may be generally inferred from the character of the crime at issue and the source's relation to the crime. — U.S. at ——, 113 S.Ct. at 2023. Because the parties have not had the opportunity to address application of exemption (b)(7)(D) in light of the Supreme Court's decision, I will deny without prejudice DEA's motion for summary judgment with respect to the information claimed exempt under (b)(7)(D). DEA is granted leave to file a supplemental motion for summary judgment supported by appropriate affidavits and a memorandum addressing information withheld under ex-

emption 5 U.S.C. § 552(b)(7)(D) within thirty days of the date of this Order;

### G. *Law Enforcement Methods, 5 U.S.C. § 552(b)(7)(E).*

51. Section 552(b)(7)(E) exempts from disclosure records or information gathered for law enforcement purposes to the extent disclosure would reveal "techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). This exemption is limited to information revealing secret or obscure investigative techniques or procedures. *See Jaffe v. C.I.A.*, 573 F.Supp. 377, 387 (D.D.C.1983). "[T]o properly invoke Exemption 7(E), the government bears the burden of establishing that the requested record was compiled for 'law enforcement purposes' and that disclosure of the record will result in the harm Exemption 7(E) seeks to avoid." *Cowsen–El v. United States Dept. of Justice*, 826 F.Supp. 532 (D.D.C.1992); ·

52. DEA contends several of the documents withheld from Manchester contain information within this exemption.[22] However, DEA's briefings and affidavits do not address this exemption, precluding me from conducting a meaningful review of DEA's reasons for invoking this exemption. Therefore, DEA's motion for summary judgment with respect to this information is denied without prejudice. DEA is granted leave to file a supplemental motion for summary judgment supported by appropriate affidavits and a memorandum addressing information withheld under exemption 5 U.S.C. § 552(b)(7)(E) within thirty days of the date of this Order;

**21.** The following pages of the *Vaughn* index contain the identities of DEA confidential sources and/or the information provided by them, which, it is claimed, are subject to (b)(7)(D)'s protections: 11, 13, 15, 16, 20, 24, 28, 32, 36, 56, 68, 87–93, 96–101, 115–18, 121–23, 136, 140, 146–51, 153–59, 167–79, 182–94, 196–208, 210–50, 255–313, 365–77, 379, 384, 393–94, 397–99, 401–05, 407–10, 412–13, 450–94, 496–98, 500, 504–08, 510–18, 520, 522–41, 543–44, 556–58, 562–73, 580–82, 594, 596, 611, 613, 615, 618–22, 624, 626–28, 631, 634–37, 651–700, 713–14, 717–18, 728–29, 745, 776–800, 865–940, and 958–95.

**22.** Information identifying law enforcement methods generally not known to the public is claimed to be found on the following pages of the *Vaughn* index: 500, 504, 509–17, 519–30, 533–39, 546–47, 595–96, 603–05, 609, 617–21, 623–24, 626–28, 634–37, and 865–940.

H. *Life or Safety of Persons, 5 U.S.C. § 552(b)(7)(F).*

 53. Exemption (b)(7)(F) permits an agency to withhold records or information compiled for law enforcement purposes which, if released, "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F); *see also Albuquerque Publishing Co.*, 726 F.Supp. at 858;

54. DEA relies on this exemption to withhold "[t]he names and identities of DEA Special Agents, Supervisory Special Agents, and other law enforcement officers." *Bordley I* ¶ 28.[23] The affidavit states that these individuals "routinely approach and associate with violators in a covert capacity," many of whom are armed and "have known violent tendencies." *Id.* According to DEA, past release of agents' identities "has resulted in several instances of physical attacks, threats, harassment, and attempted murder of DEA personnel." *Id.* DEA, therefore, believes that disclosure in this instance "could reasonably be expected" to result in "similar abuse." *Id.;*

55. I find that the DEA's affidavits and *Vaughn* index "are sufficiently detailed" for the Court "to make a reasoned determination that the exemption [ (b)(7)(F) ] was properly invoked," and "DEA has established the requisite nexus between disclosure and possible harm to its personnel." *Albuquerque Publishing Co.*, 726 F.Supp. at 858; and, therefore,

## V. SUMMARY

56. DEA's motion for summary judgment is **DENIED** without prejudice with respect to information withheld under exemptions 5 U.S.C. §§ 552(b)(7)(A), (b)(7)(D), and (b)(7)(E). DEA is granted leave for thirty days from the date of this Order to provide a supplemental motion for summary judgment with supporting memorandum and affidavits

addressing information claimed exempt under 5 U.S.C. §§ 552(b)(7)(A), (b)(7)(D), and (b)(7)(E). DEA's motion is **GRANTED** in all other respects. Plaintiff's motions are **DENIED.**

AND IT IS SO ORDERED.

---

**23.** The identities of DEA special agents, supervisory special agents, and other law enforcement officers, withheld under exemption (b)(7)(F), are found on the following pages of the *Vaughn* index: 5, 9, 12, 14, 16, 19–20, 24, 28, 32, 36, 40, 44, 48, 52, 56, 60, 64, 66, 68, 70, 72, 74, 76, 78, 80–82, 84, 87, 94, 96–97, 102–06, 108, 110–15, 120–21, 124–33, 135–36, 138–46, 152–55, 158, 160–61, 163–70, 172–74, 176, 179–83, 186, 190–94, 196–98, 200, 202, 204–05, 207–08, 210, 215–363, 365–70, 373–74, 376, 379, 381–97, 400–01, 407–08, 412–41, 443, 445–46, 448, 450–51, 453–59, 463–94, 496–98, 500–01, 503–31, 533–41, 543, 546–48, 551, 556–58, 567–68, 577–619, 622–23, 625–700, 706–09, 711–800, and 802–995.